PATRICIA M. MEYER, ADMINISTRATRIX FOR THE ESTATE OF CLEARMAN I. FRISBEE v. JO ANN WALLS, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS LICENSE HOLDER AND ADMINISTRATOR OF COMMUNITY CARE OF HAYWOOD, NO. 3; GEORGE ANDREW BROWN, III, INDIVIDUALLY AND AS GEORGE ANDREW BROWN D/B/A A & B EXCAVATING, INC.; A & B EXCAVATING, INC.; COUNTY OF BUNCOMBE, BUNCOMBE COUNTY DEPARTMENT OF SOCIAL SERVICES; CALVIN E. UNDERWOOD, JR., INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE BUNCOMBE COUNTY DEPARTMENT OF SOCIAL SERVICES; KAY BARROW, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS SUPERVISOR AT THE BUNCOMBE COUNTY DEPARTMENT OF SOCIAL SERVICES; MACKEY MILLER, INDIVIDUALLY, AND IN HIS OFFICIAL CAPACITY AS A SOCIAL WORKER AT THE BUNCOMBE COUNTY DEPARTMENT OF SOCIAL SERVICES

No. 271PA96

(Filed 5 September 1997)

1. **State §§ 30, 38 (NCI4th)— applicability of Tort Claims Act—action against county DSS—jurisdiction in superior court**

The Tort Claims Act applies only to actions against State departments, institutions, and agencies and does not apply to claims against officers, employees, involuntary servants, and agents of the State. Therefore, jurisdiction for a negligence suit against a county DSS lies in the superior court rather than in the

Industrial Commission pursuant to the Tort Claims Act, regardless of whether the county DSS was acting as an agent of DHR, since the DSS is not a State agency.

**Am Jur 2d, States, Territories, and Dependencies §§ 129 et seq.**

2. **Counties § 126 (NCI4th)— action against county DSS— waiver of governmental immunity—liability insurance— sufficiency of allegations**

Plaintiff sufficiently alleged a waiver of governmental immunity by Buncombe County where plaintiff alleged that Buncombe County waived immunity pursuant to N.C.G.S. § 153A-435(a) through the purchase of liability insurance. Therefore, the trial court improperly dismissed a claim against the Buncombe County DSS for lack of subject matter jurisdiction.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 37 et seq.**

**Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability. 68 ALR2d 1437.**

**Validity and construction of statute authorizing or requiring governmental unit to procure liability insurance covering public officers or employees for liability arising out of performance of public duties. 71 ALR3d 6.**

**Validity and construction of statute or ordinance limiting the kinds or amount of actual damages recoverable in tort action against governmental unit. 43 ALR4th 19.**

3. **Public Officers and Employees §§ 35, 68 (NCI4th); State § 19 (NCI4th)— negligence of DSS and its employees—suit not limited to DHR—superior court claim against DSS and individuals**

Plaintiff was not limited to a suit against DHR as principal for alleged negligence by a county DSS and its employees. Although plaintiff may not receive a double recovery, plaintiff may seek a judgment against the agent or principal or both; therefore, the fact that DSS and its employees may have been acting as agents of DHR, a state agency, does not preclude a claim against them in superior court.

Am Jur 2d, Public Officers and Employees §§ 301, 302, 330, 332.

Validity and construction of statute authorizing or requiring governmental unit to procure liability insurance covering public officers or employees for liability arising out of performance of public duties. 71 ALR3d 6.

Validity and construction of statute authorizing or requiring governmental unit to indemnify public officer or employee for liability arising out of performance of public duties. 71 ALR3d 90.

4. **Election of Remedies § 2 (NCI4th); State § 19 (NCI4th); Public Officers and Employees § 68 (NCI4th)— Tort Claims action against agency—superior court action against agent or employee**

A plaintiff may maintain both a suit against a state agency in the Industrial Commission under the Tort Claims Act and a suit against the negligent agent or employee in the General Court of Justice for common law negligence.

Am Jur 2d, Election of Remedies §§ 8, 9, 16-19; Municipal, County, School, and State Tort Liability §§ 61 et seq.; States, Territories and Dependencies §§ 99-117.

5. **Public Officers and Employees § 35 (NCI4th)— public official—official or individual capacity—acts outside official duties—irrelevancy**

Whether allegations relate to actions outside the scope of a defendant's official duties is not relevant in determining whether the defendant is being sued in his or her official or individual capacity.

Am Jur 2d, Public Officers and Employees §§ 301, 302, 330, 332.

Validity and construction of statute authorizing or requiring governmental unit to procure liability insurance covering public officers or employees for liability arising out of performance of public duties. 71 ALR3d 6.

Validity and construction of statute authorizing or requiring governmental unit to indemnify public officer or employee for liability arising out of performance of public duties. 71 ALR3d 90.

6. **Public Officers and Employees §§ 35, 68 (NCI4th)— claims against DSS official and employees—official and individual capacities**

Plaintiff's complaint seeks recovery from the individual defendants, an official and employees of a county DSS, in both their official and individual capacities where the complaint states in its caption and allegations that defendants are being sued in their official and individual capacities, and where plaintiff seeks damages from both the individual defendants and the county DSS.

**Am Jur 2d, Public Officers and Employees §§ 301, 302, 330, 332.**

**Validity and construction of statute authorizing or requiring governmental unit to procure liability insurance covering public officers or employees for liability arising out of performance of public duties. 71 ALR3d 6.**

**Validity and construction of statute authorizing or requiring governmental unit to indemnify public officer or employee for liability arising out of performance of public duties. 71 ALR3d 90.**

7. **Public Officers and Employees §§ 35, 68 (NCI4th)— claims against DSS official and employees—official capacities—superior court action**

A claim against an official and employees of a county DSS in their official capacities was a claim against DSS and was properly before the superior court along with a claim against DSS.

**Am Jur 2d, Public Officers and Employees §§ 301, 302, 330, 332.**

**Validity and construction of statute authorizing or requiring governmental unit to procure liability insurance covering public officers or employees for liability arising out of performance of public duties. 71 ALR3d 6.**

**Validity and construction of statute authorizing or requiring governmental unit to indemnify public officer or employee for liability arising out of performance of public duties. 71 ALR3d 90.**

MEYER v. WALLS

[347 N.C. 97 (1997)]

**8. Public Officers and Employees §§ 35, 68 (NCI4th)— claims against public official and employees—improper dismissals—failure to appeal**

Holdings by the Court of Appeals that the director of a county DSS was a public official and a DSS social worker and a DSS supervisor of adult protective services were public employees, and that the trial court improperly dismissed a claim against the director in his individual capacity for allegations of willful and wanton conduct and claims against the employees in their individual capacities for mere negligence were allowed to stand where the defendants did not appeal these holdings to the Supreme Court.

**Am Jur 2d, Public Officers and Employees §§ 301, 302, 330, 332.**

**Validity and construction of statute authorizing or requiring governmental unit to procure liability insurance covering public officers or employees for liability arising out of performance of public duties. 71 ALR3d 6.**

**Validity and construction of statute authorizing or requiring governmental unit to indemnify public officer or employee for liability arising out of performance of public duties. 71 ALR3d 90.**

**9. Public Officers and Employees § 35 (NCI4th)— public official—willful and wanton conduct—conclusory allegation**

A conclusory allegation that a public official acted willfully and wantonly is not sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss; rather, the facts alleged in the complaint must support such a conclusion.

**Am Jur 2d, Public Officers and Employees §§ 301, 302, 330, 332.**

**Validity and construction of statute authorizing or requiring governmental unit to procure liability insurance covering public officers or employees for liability arising out of performance of public duties. 71 ALR3d 6.**

**Validity and construction of statute authorizing or requiring governmental unit to indemnify public officer or employee for liability arising out of performance of public duties. 71 ALR3d 90.**

MEYER v. WALLS

[347 N.C. 97 (1997)]

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 122 N.C. App. 507, 471 S.E.2d 422 (1996), affirming in part, reversing in part, and remanding an order on defendants' motions to dismiss entered 2 November 1994 by Downs, J., in Superior Court, Haywood County. Heard in the Supreme Court 13 February 1997.

*Hyler & Lopez, PA, by George B. Hyler, Jr., and Robert J. Lopez, for plaintiff-appellee.*

*Charlotte A. Wade for defendant-appellants Buncombe County DSS, Underwood, Miller, and Barrow.*

*Michael F. Easley, Attorney General, by D. Sigsbee Miller, Assistant Attorney General, for the State, amicus curiae.*

*James B. Blackburn and Womble Carlyle Sandridge & Rice, P.L.L.C., by Robert H. Sasser, III, on behalf of The North Carolina Association of County Commissioners, amicus curiae.*

ORR, Justice.

On 9 February 1992, decedent Clearman I. Frisbee committed suicide by placing an explosive blasting cap in his mouth and detonating it with a battery. More than two years prior to Mr. Frisbee's death, the Buncombe County Department of Social Services ("DSS" or "Buncombe County DSS") petitioned the Buncombe County Clerk of Superior Court to declare Mr. Frisbee legally incompetent because his multiple medical and psychological problems rendered him "unable to manage his own affairs." On 28 November 1989, Mr. Frisbee was adjudicated legally incompetent, and defendant DSS was appointed as Mr. Frisbee's legal guardian. While under DSS' care, Mr. Frisbee was placed in and removed from several community care facilities because of his behavior. On 11 February 1991, Mr. Frisbee was admitted to Community Care of Haywood No. 3 ("Community Care #3") by defendant Jo Ann Walls, the administrator of Community Care #3. At that time, defendant Mackey Miller was the DSS social worker handling Mr. Frisbee's case, defendant Calvin E. Underwood was the director of the Buncombe County DSS, and defendant Kay Barrow was the supervisor of the Adult Protective Services Unit at the Buncombe County DSS. Because of their respective positions with DSS, both defendants Underwood and Barrow had general guardianship authority over Mr. Frisbee.

## MEYER v. WALLS

[347 N.C. 97 (1997)]

On 9 November 1993, plaintiff Patricia M. Meyer, as administratrix for the estate of Clearman I. Frisbee, filed a wrongful death action alleging that Mr. Frisbee's death was proximately caused by the negligence of the named defendants. Plaintiff alleged, among other things, that defendants Underwood, Barrow, and Miller, individually and in their official capacities as agents of defendant Buncombe County DSS, (1) failed to make proper provisions for Mr. Frisbee's care, comfort, and maintenance; (2) failed to act in his best interest; and (3) failed to adequately respond to information provided by family members regarding Mr. Frisbee's condition and conditions at Community Care #3. Plaintiff also asserted multiple negligence claims against defendant Buncombe County DSS. Defendants Underwood, Barrow, Miller, and Buncombe County DSS filed motions to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6). After a hearing, the trial court dismissed plaintiff's claim against defendant Buncombe County DSS for lack of subject matter jurisdiction, concluding that exclusive jurisdiction over the claim against DSS is in the Industrial Commission, and dismissed plaintiff's claim against defendants Underwood, Barrow, and Miller for failure to state a claim upon which relief can be granted. This appeal pertains solely to these motions to dismiss filed by defendants Underwood, Barrow, Miller, and DSS.

Plaintiff appealed to the Court of Appeals, which held: (1) jurisdiction depends on the statutory authority for waiver of immunity, the jurisdictional provisions of N.C.G.S. § 153-435(b) control over those of N.C.G.S. § 143-291(a) where there is a conflict, and a remand is necessary for a determination as to whether the amount of insurance coverage exceeded the $100,000 cap on recovery under the Tort Claims Act; (2) a suit against Underwood in his official capacity must proceed in the same forum as a suit against DSS and must therefore be remanded along with the suit against DSS; (3) the trial court properly dismissed plaintiff's claim against Underwood in his individual capacity for mere negligence in the performance of his duties and improperly dismissed the claim against Underwood in his individual capacity for allegations of willful and wanton conduct; and (4) the trial court improperly dismissed plaintiff's claims against Barrow and Miller in their individual capacities for mere negligence. We reverse the Court of Appeals' decision as it pertains to the claim against DSS because we hold that since DSS is not a state agency, the Tort Claims Act does not apply to the claim against DSS, and we affirm the Court of Appeals' decision as it pertains to the claims against Underwood, Barrow, and Miller in their official and individual capacities.

## DEFENDANT BUNCOMBE COUNTY DEPARTMENT
## OF SOCIAL SERVICES

The trial court dismissed the claim against DSS based on lack of subject matter jurisdiction on the grounds that the action must be brought in the Industrial Commission. The Court of Appeals, however, concluded that jurisdiction depends on the statutory authority for waiver of immunity, that the jurisdictional provisions of N.C.G.S. § 153-435(b) control over those of N.C.G.S. § 143-291(a) where there is a conflict, and that a remand is necessary for a determination as to whether the amount of insurance coverage exceeded the $100,000 cap on recovery under the Tort Claims Act. We disagree with the Court of Appeals' interpretation of the law governing this issue.

[1] The issue before us is whether jurisdiction for the suit against DSS lies before the Industrial Commission pursuant to the Tort Claims Act or before the Superior Court as originally filed by plaintiff. We conclude that jurisdiction resides in the Superior Court. Under the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity. *E.g., Gammons v. N.C. Dep't of Human Resources*, 344 N.C. 51, 54, 472 S.E.2d 722, 723 (1996). Under the doctrine of governmental immunity, a county is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity. *E.g., State ex rel. Hayes v. Billings*, 240 N.C. 78, 80, 81 S.E.2d 150, 152 (1954). An action against a commission or board created by statute as an agency of the State where the interest or rights of the State are directly affected is in fact an action against the State. *Prudential Ins. Co. of America v. Powell*, 217 N.C. 495, 8 S.E.2d 619 (1940). Likewise, an action against a county agency which directly affects the rights of the county is in fact an action against the county.

N.C.G.S. § 143-291(a) of the Tort Claims Act provides a limited waiver of immunity for negligence claims against all departments, institutions, and agencies of the State. N.C.G.S. § 153A-435 provides that a county's governmental immunity may be waived by the purchase of liability insurance. "Waiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 537-38, 299 S.E.2d 618, 627 (1983). We hold that because Buncombe County DSS is not a state agency, the Tort Claims Act does not apply.

MEYER v. WALLS

[347 N.C. 97 (1997)]

The Tort Claims Act provides in pertinent part:

(a) The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims *against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State.* The Industrial Commission shall determine whether or not each individual claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

N.C.G.S. § 143-291(a) (1996) (emphasis added).

This Court has held that the Tort Claims Act does not confer jurisdiction in the Industrial Commission over a claim against an employee of a state agency. We addressed this issue in *Wirth v. Bracey*, 258 N.C. 505, 507-08, 128 S.E.2d 810, 813 (1963):

The only claim authorized by the Tort Claims Act is a claim against the State agency. True, recovery, if any, must be based upon the *actionable negligence of an employee* of such agency while acting within the scope of his employment. However, recovery, if any, against the alleged negligent employee must be by common law action.

Likewise, the Tort Claims Act does not confer jurisdiction in the Industrial Commission over a claim against a county department that is an alleged involuntary servant or agent of the State. *See Turner v. Gastonia City Bd. of Educ.*, 250 N.C. 456, 109 S.E.2d 211 (1959). In *Turner v. Board of Education*, the plaintiff sued the Gastonia City Board of Education in the Industrial Commission based on the negligence of an employee of the City Board. This Court held that because the City Board was not a state agency, the Tort Claims Act did not constitute a waiver of immunity as to the City Board.

The General Assembly created the State Board of Education and fixed its duties. It is an agency of the State with statewide application. The General Assembly likewise created the county and city boards and fixed their duties which are altogether local. The Tort Claims Act, applicable to the State Board of Education

and to the State departments and agencies, does not include local units such as county and city boards of education.

. . . .

Tort claims may be filed before the Industrial Commission against "the State Board of Education, State Highway & Public Works Commission, and all other departments, institutions, and agencies of the State." Claims for tort liability are allowed only by virtue of the waiver of the State's immunity. Under the ordinary rules of construction, "departments, institutions, and agencies of the State" must be interpreted in connection with the preceding designation, "State Board of Education and State Highway & Public Works Commission." Where words of general enumeration follow those of specific classification, the general words will be interpreted to fall within the same category as those previously designated. The maxim *ejusdem generis* applies especially to the construction of legislative enactments. It is founded upon the obvious reason that if the legislative body had intended the general words to be used in their unrestricted sense the specific words would have been omitted. In no sense may we consider the Gastonia City Board of Education in the same category as the State Board of Education and the State Highway & Public Works Commission. For example, we may well consider the State Board of Agriculture, G.S. 106-2, the Board of Conservation and Development, G.S. 113-4, and the State Board of Public Welfare, G.S. 108-1, in the same general category as the State Board of Education and the State Highway & Public Works Commission. The Gastonia City Board of Education does not meet the classification. County and city boards of education serve very important, though purely local functions. The State contributes to the school fund, but the local boards select and hire the teachers, other employees and operating personnel. The local boards run the schools.

*Turner v. Board of Education*, 250 N.C. at 462-63, 109 S.E.2d at 216 (citations omitted).

· The Court of Appeals stated that Buncombe County DSS "is an agent of the Department of Human Resources and a subordinate division of the State and therefore within the purview of G.S. 143-291(a)." *Meyer v. Walls*, 122 N.C. App. 507, 514, 471 S.E.2d 422, 427 (1996). In support of this statement, the Court of Appeals cited *Vaughn v. N.C. Dep't of Human Resources*, 296 N.C. 683, 690, 252 S.E.2d 792, 797

(1979); *EEE-ZZZ Lay Drain Co. v. N.C. Dep't of Human Resources*, 108 N.C. App. 24, 28, 422 S.E.2d 338, 341 (1992); and *Coleman v. Cooper*, 102 N.C. App. 650, 657-58, 403 S.E.2d 577, 581-82, *disc. rev. denied*, 329 N.C. 786, 408 S.E.2d 517 (1991).

In *Vaughn* and *Gammons*, the plaintiffs sued the Department of Human Resources ("DHR") in the Industrial Commission under the Tort Claims Act. The issue in *Vaughn* and *Gammons* was whether DHR could be held vicariously liable as principal for the acts of a county DSS as agent. In the case at bar, plaintiff is seeking recovery directly against a county DSS, the alleged agent, rather than DHR, the alleged principal. Thus, *Vaughn* and *Gammons* do not support a holding that the Tort Claims Act applies to a suit against the alleged agent. In fact, in *Vaughn* and *Gammons*, this Court held that the county departments of social services were agents of DHR. The Tort Claims Act lists agents in a category with officers, employees, and involuntary servants, rather than with state departments, institutions, and agencies. An agent of the State and a state agency are fundamentally different and are treated differently by the Tort Claims Act.

As we stated above, a statutory waiver of sovereign immunity must be strictly construed. Therefore, the Tort Claims Act applies only to actions against state departments, institutions, and agencies and does not apply to claims against officers, employees, involuntary servants, and agents of the State. To the extent that any cases are inconsistent with this holding, they are overruled. *See Robinette v. Barriger*, 116 N.C. App. 197, 447 S.E.2d 498 (1994) (holding that the Alexander County Health Department is a state agency, rather than a county agency, and that because the Industrial Commission has exclusive jurisdiction of negligence actions against the State, the trial court did not err in granting summary judgment for the county based on a lack of subject matter jurisdiction), *aff'd per curiam without precedential value*, 342 N.C. 181, 463 S.E.2d 78 (1995); *EEE-ZZZ Lay Drain Co. v. N.C. Dep't of Human Resources*, 108 N.C. App. 24, 422 S.E.2d 338 (holding that because the Transylvania County Health Department acted as an agent of the North Carolina Department of Environment, Health, and Natural Resources ("DEHNR"), the county health department was, like DEHNR, immune from suit); *Coleman v. Cooper*, 102 N.C. App. 650, 658, 403 S.E.2d 577, 582 (holding that a cause of action against Wake County as a subordinate division of the State must be brought before the Industrial Commission under the Tort Claims Act). We note that in *Gammons*, this Court stated that in

*Coleman*, the Court of Appeals correctly applied *Vaughn* in determining that Wake County DSS was acting as an agent of DHR; however, we made no reference to whether Wake County could be sued under the Tort Claims Act.

[2] For the foregoing reasons, the Tort Claims Act does not apply to the claim against Buncombe County DSS, regardless of whether Buncombe County DSS was acting as an agent of DHR. However, under the doctrine of governmental immunity, the claim would still be subject to dismissal unless Buncombe County waived immunity. In the complaint, plaintiff alleged that Buncombe County waived immunity pursuant to N.C.G.S. § 153A-435(a) through the purchase of liability insurance. N.C.G.S. § 153A-435(a) provides in pertinent part that the "[p]urchase of insurance pursuant to this subsection waives the county's immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function." We conclude that plaintiff sufficiently alleged a waiver of immunity by Buncombe County through the purchase of liability insurance. Therefore, the trial court improperly dismissed the claim against Buncombe County DSS for lack of subject matter jurisdiction.

[3] Defendants DSS, Underwood, Barrow, and Miller argue that this claim may be brought against only DHR, as principal, and not defendants, as agents. This argument is contrary to clearly established law. Although a plaintiff may not receive a double recovery, he may seek a judgment against the agent or the principal or both. *See Bowen v. Iowa Nat'l Mut. Ins.* Co., 270 N.C. 486, 155 S.E.2d 238 (1967); *Wirth v. Bracey*, 258 N.C. 505, 128 S.E.2d 810; *Palomino Mills v. Davidson Mills Corp.*, 230 N.C. 286, 52 S.E.2d 915 (1949). Therefore, the fact that defendants may have been acting as agents of the State does not preclude a claim against defendants.

[4] Furthermore, the fact that the Tort Claims Act provides for subject matter jurisdiction in the Industrial Commission over a negligence claim against the State does not preclude a claim against defendants in Superior Court. A plaintiff may maintain both a suit against a state agency in the Industrial Commission under the Tort Claims Act and a suit against the negligent agent or employee in the General Court of Justice for common-law negligence. *See Wirth v. Bracey*, 258 N.C. at 507-08, 128 S.E.2d at 813 (holding that plaintiff's suit against a state employee was not barred by the doctrine of election). As this Court explained in *Wirth v. Bracey*:

"The decisions generally are to the effect that in an action *ex delicto*, where the doctrine of *respondeat superior* is, or may be, invoked, the injured party may sue the servant alone or the master alone, or may bring a single action against both." *Bullock v. Crouch*, 243 N.C. 40, 42, 89 S.E.2d 749[, 751 (1955)].

Prior to the enactment of the Tort Claims Act the Highway Commission, as an agency or instrumentality of the State, enjoyed immunity to liability for injury or loss caused by the negligence of its employees. Even so, then as now, an employee of such agency was personally liable for his own actionable negligence. The Tort Claims Act, waiving governmental immunity to that extent, permitted recovery against the State agency as therein provided. The obvious intention of the General Assembly in enacting the Tort Claims Act was to enlarge the rights and remedies of a person injured by the actionable negligence of an employee of a State agency while acting in the course of his employment.

*Wirth v. Bracey*, 258 N.C. at 507-08, 128 S.E.2d at 813 (citations omitted). We note that the State may be joined as a third-party defendant in the state courts in an action for contribution or in an action for indemnification. *See* N.C.G.S. § 1A-1, Rule 14(c) (1990); N.C.G.S. § 1B-1(h) (1983); *Guthrie v. N.C. State Ports Auth.*, 307 N.C. at 540, n.5, 299 S.E.2d at 628, n.5; *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 331, 293 S.E.2d 182, 186 (1982).

For the foregoing reasons, the fact that defendants may have been acting as agents of DHR does not render defendants immune from suit in Superior Court. Therefore, the trial court properly denied the motion to dismiss the claims against Underwood, Barrow, and Miller for lack of subject matter jurisdiction. Also, plaintiff sufficiently alleged a waiver of immunity by Buncombe County through the purchase of liability insurance. Therefore, the trial court improperly allowed the motion to dismiss the claim against Buncombe County DSS for lack of subject matter jurisdiction.

## DEFENDANTS UNDERWOOD, BARROW, AND MILLER

The complaint stated in its caption and in its allegations that plaintiff was suing Underwood, Barrow, and Miller in both their official and individual capacities. In its order, the trial court did not refer to the official or individual capacities of these claimants. Instead, without explanation, the court allowed these defendants'

motions to dismiss for failure to state a claim upon which relief can be granted and denied their motions to dismiss for lack of subject matter jurisdiction.

In ruling on the individual defendants' motions to dismiss, the first step is to determine whether the complaint seeks recovery from the individuals in their official or individual capacities, or both. The difference between official- and individual-capacity lawsuits was explained by Anita R. Brown-Graham and Jeffrey S. Koeze in an article published by the Institute of Government: A suit against a defendant in his individual capacity means that the plaintiff seeks recovery from the defendant directly; a suit against a defendant in his official capacity means that the plaintiff seeks recovery from the entity of which the public servant defendant is an agent. Anita R. Brown-Graham & Jeffrey S. Koeze, *Immunity from Personal Liability under State Law for Public Officials and Employees: An Update*, Loc. Gov't L. Bull. 67, at 7 (Inst. of Gov't, Univ. of N.C. at Chapel Hill), Apr. 1995 [hereinafter "Law Bulletin"].

As Brown-Graham and Koeze explained:

> The crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief sought, not the nature of the act or omission alleged. If the plaintiff seeks an injunction requiring the defendant to take an action involving the exercise of a governmental power, the defendant is named in an official capacity. If money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant. If the former, it is an official-capacity claim; if the latter, it is an individual-capacity claim; and if it is both, then the claims proceed in both capacities.

*Id.*; *see also Kentucky v. Graham*, 473 U.S. 159, 166, 87 L. Ed. 2d 114, 121 (1985) (explaining that "while an award of damages against an official in his personal [individual] capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself"); *Moore v. City of Creedmoor*, 345 N.C. 356, 367, 481 S.E.2d 14, 21 (1997) (holding that claims against the City of Creedmoor police chief and a member of the City of Creedmoor Board of Commissioners in their official capacities were merely another way of bringing suit against the City of Creedmoor).

**[5]** Thus, " '[o]fficial capacity' is not synonymous with 'official duties'; the phrase is a legal term of art with a narrow meaning—the suit is in effect one against the entity." Law Bulletin at 7. Whether the allegations relate to actions outside the scope of defendant's official duties is not relevant in determining whether the defendant is being sued in his or her official or individual capacity. To hold otherwise would contradict North Carolina Supreme Court cases that have held or stated that public employees may be held individually liable for mere negligence in the performance of their duties. *See, e.g., Givens v. Sellars*, 273 N.C. 44, 159 S.E.2d 530 (1968); *Wirth v. Bracey*, 258 N.C. 505, 128 S.E.2d 810; *Smith v. Hefner*, 235 N.C. 1, 68 S.E.2d 783 (1952); *Hansley v. Tilton*, 234 N.C. 3, 65 S.E.2d 300 (1951); *Miller v. Jones*, 224 N.C. 783, 32 S.E.2d 594 (1945); *Lewis v. Hunter*, 212 N.C. 504, 193 S.E. 814 (1937).

**[6]** In the case before us, an examination of the complaint reveals that as well as stating in the caption and allegations that Underwood, Barrow, and Miller were being sued in their official and individual capacities, plaintiff was seeking damages from all defendants, including Underwood, Barrow, Miller, and their employer, Buncombe County DSS. Therefore, the complaint seeks recovery from Underwood, Barrow, and Miller in both their official and individual capacities.

**[7]** Next, we must look at the official-capacity claims separately from the individual-capacity claims. A claim against Underwood, Barrow, and Miller in their official capacities is a claim against DSS and is subject to the same jurisdictional rulings as the suit against DSS. Therefore, for the reasons stated above, the claims against Underwood, Barrow, and Miller in their official capacities are properly before the Superior Court along with the claim against DSS, and as to this aspect of plaintiff's claim, the trial court erred.

We turn now to a determination of whether the trial court properly dismissed the claims against Underwood, Barrow, and Miller in their individual capacities for failure to state a claim upon which relief can be granted. Our standard of review is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In ruling upon such a motion, the complaint is to be liberally construed, and the trial court should not dismiss the complaint "unless it appears beyond doubt that [the]

plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987).

Our determination depends partly on whether these defendants are public officials or public employees. Public officials cannot be held individually liable for damages caused by mere negligence in the performance of their governmental or discretionary duties; public employees can. *See, e.g., Harwood v. Johnson*, 326 N.C. 231, 241, 388 S.E.2d 439, 445 (1990); *Smith v. State*, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976); *Givens v. Sellars*, 273 N.C. at 49, 159 S.E.2d at 534; *Smith v. Hefner*, 235 N.C. at 7, 68 S.E.2d at 787; *Hansley v. Tilton*, 234 N.C. at 8, 65 S.E.2d at 303; *Miller v. Jones*, 224 N.C. at 787, 32 S.E.2d at 597.

> It is settled law in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. The rule in such cases is that an official may not be held liable unless it be alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties. And, while an employee of an agency of government, as distinguished from a public official, is generally held individually liable for negligence in the performance of his duties, nevertheless such negligence may not be imputed to the employer on the principle of *respondeat superior*, when such employer is clothed with governmental immunity.

*Smith v. Hefner*, 235 N.C. at 7, 68 S.E.2d at 787 (citations omitted). "As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." *Smith v. State*, 289 N.C. at 331, 222 S.E.2d at 430 (citing *Carpenter v. Atlanta & C.A.L. Ry. Co.*, 184 N.C. 400, 406, 114 S.E. 693, 696 (1922)).

> The immunity thus extended to officers in the performance of a public duty grows out of a public policy which is fully explained in the two cases cited. *Hipp v. Ferrall*, [173 N.C. 167, 91 S.E. 831 (1917)]; *Templeton v. Beard*, [159 N.C. 63, 74 S.E. 735 (1912)], and cases cited. One reason for the existence of such a rule is that it would be difficult to find those who would accept public office or engage in the administration of public affairs if they were to be

held personally liable for acts or omissions involved in the exercise of discretion and sound judgment which they had performed to the best of their ability, and without any malevolent intention toward anyone who might be affected thereby. However, in proper cases even public officers may be liable for misfeasance in the performance of their ministerial duties where injury has ensued.

*Miller v. Jones*, 224 N.C. at 787, 32 S.E.2d at 597.

The [public official] immunity has never been extended to a mere employee of a governmental agency upon this principle, although employed upon public works, since the compelling reasons for the nonliability of a public officer, clothed with discretion, are entirely absent. . . . The mere fact that a person charged with negligence is an employee of others to whom immunity from liability is extended on grounds of public policy does not thereby excuse him from liability for negligence in the manner in which his duties are performed, or for performing a lawful act in an unlawful manner. The authorities generally hold the employee individually liable for negligence in the performance of his duties, notwithstanding the immunity of his employer, although such negligence may not be imputed to the employer on the principle of *respondeat superior*, when such employer is clothed with a governmental immunity under the rule.

*Id.*

As the Court of Appeals noted, when categorizing a public servant as either a public officer or a public employee, this Court has recognized several basic distinctions:

A public officer is someone whose position is created by the constitution or statutes of the sovereign. *State v. Hord*, 264 N.C. 149, 155, 141 S.E.2d 241, 245 (1965). "An essential difference between a public office and mere employment is the fact that the duties of the incumbent of an office shall involve the exercise of some portion of sovereign power." *Id.* Officers exercise a certain amount of discretion, while employees perform ministerial duties. Discretionary acts are those requiring personal deliberation, decision and judgment; duties are ministerial when they are "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Jensen v. S.C. Dept. of Social Services*, 297 S.C. 323, [322,] 377

S.E.2d 102[, 107] (1988) [, *aff'd*, 304 S.C. 195, 403 S.E.2d 615 (1991)].

*Hare v. Butler*, 99 N.C. App. 693, 700, 394 S.E.2d 231, 235-36, *disc. rev. denied*, 327 N.C. 634, 399 S.E.2d 121 (1990).

[8],[9] In the case before us, the Court of Appeals concluded that Underwood was a public official and that Barrow and Miller were public employees. The Court of Appeals also held that the allegations in the complaint that Underwood's conduct was "willful, wanton and in reckless disregard of the rights of Clearman Frisbee" were sufficient to pierce his public-official immunity. Therefore, the court held that dismissal of the individual-capacity claim against Underwood was improper. The Court of Appeals also held that as public employees, Barrow and Miller were not entitled to any immunity defense. Therefore, the court held that dismissal of the individual-capacity claims against Barrow and Miller was also improper. Defendants did not appeal these holdings to this Court. Therefore, the Court of Appeals' holdings on the individual-capacity claims against Underwood, Barrow, and Miller stand. However, we note that a conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion.

For the foregoing reasons, we reverse the Court of Appeals' decision as it pertains to the claim against DSS because we hold that since DSS is not a state agency, the Tort Claims Act does not apply to the claim against DSS. However, we hold that plaintiff sufficiently alleged a waiver of immunity by Buncombe County through the purchase of liability insurance. Therefore, we hold that the trial court improperly allowed the motion to dismiss the claim against Buncombe County DSS for lack of subject matter jurisdiction. We affirm the Court of Appeals' decision as it pertains to the claims against Underwood, Barrow, and Miller, and we remand the case to the Court of Appeals for further remand to Superior Court, Haywood County, for further proceedings not inconsistent with this opinion. Therefore, this case is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.